May it please the Court, Sarah Harris for Appellant Roberto Beras. For two reasons, this Court should hold that Mr. Beras can proceed under Section 2241 to litigate his actual innocence claim. First, Mr. Beras has shown a possibility that under the Supreme Court's Cuellar decision, he is actually innocent of international money laundering under Section 1956A2B1. The government agrees that Cuellar is retroactive. The government doesn't contest that Second Circuit precedent foreclosed Mr. Beras from raising his actual innocence claim on direct review or in his first 2255 motion. And the jury may have convicted Mr. Beras without finding that he knew that the drug dealer's purpose in moving money to the Dominican Republic and Colombia was to conceal attributes of their funds. And second, Section 2244 does not bar this claim. That provision is discretionary and by its terms, it does not apply to the Northern District of Ohio's decision here. To start with the actual innocence criteria under this Court's Riaz-Raquena decision. This case materially resembles Garland and Santillana and Riaz-Raquena itself, where this Court assessed the three criteria I just went through for establishing an actual innocence claim and determined that it just couldn't be sure, based on the indictment, the jury instructions, and the trial evidence presented, that the jury had in fact not inadvertently convicted the defendant of a non-existent offense, an offense that subsequent precedent made clear was no offense at all by narrowing the statute of conviction. And so to hear that possibility exists in this case. Again, the key question here is what the drug dealer's purpose was in transporting the money abroad to the Dominican Republic and to Colombia, and whether Mr. Barras knew of that purpose. And the problem here is that the government's key witness at trial, Agent Kuras, when asked point blank what was the purpose of transferring the funds, why did these drug dealers try to move their money, what's the purpose of that particular transport, he testified that the point was to plow the money back into paying other drug dealers abroad, and therefore to allow them to get paid. The purpose, in other words, was not to conceal the attributes of the funds, as the Supreme Court in Cuellar said must be present in order to find a defendant guilty of international money laundering. Now the government points to various trial evidence that they say is proof that there is some evidence, some sort of evidence of concealment. They point to the false remittances, the way in which the money was transported with the various forms. But the problem is the government, the problem is that is exactly the kind of evidence that is adequate on its own to establish international money laundering. Whereas here, there is, I mean, it's really very similar to Cuellar, because there is virtually exactly the same expert testimony in that case. Both here and in Cuellar, the government put on an expert witness from the Customs Service who said, yes, the drug dealers may, or in fact, given that it's an unlawful activity, they often do try to use surreptitious means of transporting money from the United States to places abroad. But that alone is not enough to establish money laundering, because the question is, what was the point of sending the money abroad, not how did you do it? Mr. Harris, sorry to interrupt you, but do we ever get to that? You made an opening statement about not barring under 2244, but that doesn't take into account the Sixth Circuit, where he did the same thing. So why isn't this excessive and barred? Well, I think under the plain terms of 2244A, which is a discretionary bar, that doesn't apply for several reasons. First of all, the decision was not a determination in a prior application for writ of habeas corpus. Again, right now we're at the savings clause stage. So the question is whether 2255E has been satisfied. I mean, the whole point of the Northern District of Ohio and Sixth Circuit's decisions was, they concluded that Mr. Barras couldn't get past 2255. So by the text of 2244A, there wasn't actually something that could be called a prior application for a writ of habeas corpus. I'm sorry to interrupt, but Ms. Harris, it was a 2241 application, right, that he filed in Ohio? Yes, but the court's ultimate holding was it wasn't really one, because it was essentially saying we're characterizing it as, in fact, a 2255, because the court didn't think that Mr. Barras got past the savings clause. Now, the Sixth Circuit didn't accept that reasoning, instead suggested that Mr. Barras should have, in his initial 2255, been able to litigate his queer actual innocence claim. That, of course, overlooked that he had no way of doing that, because the Second Circuit said his queer claim didn't relate back to the issues he raised in his 2255. Can I try to get at it this way? Suppose, I understand the argument that 2244A doesn't apply because of the acceptance provided in 2255. I totally get it. But just suppose that the court disagrees on that, and we find that, in fact, the abuse of the writ doctrine that has been articulated in cases like McCleskey, it does, in fact, apply to successive 2241 applications. Is that the end of the case, or is there an argument that Barras, in fact, didn't abuse the writ under McCleskey in all the cases the Supreme Court has articulated as to successive 2241s? So, yes, Judge Oldham, I think we would have several paths forward. I think we would agree that the abuse of the writ doctrine might be the right way of looking at it, because the statutory text doesn't seem to cover here. You mentioned McCleskey. McCleskey, of course, strongly suggests that the government bears the burden of pleading abuse of the writ. That's not something the government had the opportunity to do here. It would certainly, I think, need to do that. The Alan Mayo decision from the Ninth Circuit elaborates on that point. And, of course, the abuse of the writ doctrine is also a discretionary doctrine that looks heavily to the equities and, I think, inevitably would draw you into looking at the merits of the actual innocence claim here. And, again, I think the Ninth Circuit has some useful precedent on that by Judge Okuda and the Alan Mayo decision that I just mentioned. The court was willing to not consider, I think in one case, a third 2241 actual innocence application barred because it considered that the equities weighed so strongly. So, no, I don't think just considering this an abuse of the writ would be the end of the road here. Well, remind me, how many 2241s has Mr. Barrett filed? A number of them, although most of them are not relevant because they do not raise a COYAR claim. He's raised two that, in fact, are raising the COYAR actual innocence claim. But wasn't his first 2241 filed four years after COYAR's decision in 2008? Yes, that's correct. It was filed in the Northern District of Ohio, but that is the one where he wouldn't have had an opportunity to raise COYAR in it because the Southern District of New York took eight years in order to adjudicate his first 2255, and it was still pending when he filed that first 2244. 2241, so he couldn't have claimed that the 2255 process at that point was inadequate or ineffective to test the legality of his detention. He was actually sort of, I think, a bit of a victim of the procedural history and being transferred all over the country to different prisons. But he was suing his custodian and asking for relief from detention on the basis of COYAR, or I'm sorry, he was suing his custodian, asking for relief from imprisonment four years after COYAR and not relying on COYAR, which is a sort of traditional abuse of the writ problem, right, where you have an opportunity to raise the claim, clearly availed himself of 2241, but didn't raise the COYAR issue four years after the decision. Although I think the problem there, I think it's hard to characterize that as much of an abuse of the writ, given that his 2255 was still pending at that point. And so he had, I think, rightly attempted on numerous occasions to tell the Southern District of New York to please adjudicate that COYAR claim. He hadn't gotten any decision on the COYAR claim. And so in the Northern District of Ohio, on the first time, he didn't raise it. And again, I don't think that would be much of, I think, looking at the thing that should necessarily qualify as an abuse of the writ. And again, the government hasn't fled that. So I do think that this is a case in which the equities weigh very strongly in terms of adjudicating this case, really is on all fours with the three cases in which this court has already entertained actual abuse of the writ doctrine, is not something the government's relying on here. They're instead resting on 2244A, and both are discretionary. Mr. Harris, before the first question was asked of you, it sounded like you were arguing relative to the means of concealment of the money. In other words, back into the propriety of the conviction. Is there a defect in the evidence that you found that qualifies for relief in this case? Is that where you were going with that? Well, I think where I'm going is the standard this court has set out, especially in Garland and Santiano, which is, is it clear that the jury has not convicted Mr. Barras of a non-existent offense? Is it so clear, for instance, from the evidence that they couldn't have rested on Agent Kuras' testimony that the purpose was simply to send the money back to the drug dealers to that possibility exists, this is sort of a threshold gateway determination. And the next step would then be to ask the district court to entertain the 2241 to actually adjudicate the merits of the actual innocence claims. There would still be a further hurdle. So it's not so much an evidentiary defect per se, although we certainly don't think the evidence would ultimately be sufficient on the merits of the 2241. But at this stage, you're asking, are you certain as a factual matter that the jury found what it would need to find to actually convict Mr. Barras of money laundering under 1956A2B1, as the Supreme Court has interpreted that statute as required? And I think the answer is clearly no here, because no matter what the government points you to, the problem is, again, that Agent Kuras' testimony and other evidence in the record makes it clear that the jury very well might have just credited the idea that the drug dealer's whole point was to simply send that money back to buy more drugs, which is exactly what was true in Cuellar and exactly what the Supreme Court thought was inadequate. Okay. And if the court has no further questions, I would reserve my time for rebuttal. Okay. There are no questions. We'll go ahead and take up Mr. Kane's argument. He has 20 minutes. You may begin. Thank you, Your Honor. Good afternoon, Your Honors, and may it please the Court. Daniel Kane on behalf of the Warden. I'd like to address both of the points that my colleague on the other side has raised, including that the Northern District of Ohio rejected precisely the same claim in a prior habeas petition. And whether we consider that as barred or subject to dismissal under 2244, or whether we consider that as subject to dismissal under common law abuse of the BRIT and successive BRIT principles, either way, it was properly subject to dismissal. But first, I would like to discuss the likelihood that he was convicted of a non-existent offense. As every court to address this question has agreed, this scheme, the De Niro Express scheme, was designed in part to conceal where the money came from, not where it was. And there is no reasonable likelihood that Mr. Barras was convicted of a non-existent offense under Cuellar, and so he can't satisfy Section 2255B. The government established a trial that the conspirators here didn't just move money across borders in a secretive manner in the hopes that it would arrive safely. That is Cuellar. Instead, they associated invented names and addresses, and in some cases, personal messages, with particular transactions, with one purpose, to pretend that the money was coming from people other than drug traffickers. So this concealment didn't, in Cuellar's terms, facilitate the transfer. It didn't make it more likely that the money would reach its destination in the hands of foreign drug traffickers. It was instead designed to conceal the source of the funds. And that's all that Cuellar requires. Cuellar itself explains that structure can be consequences of structure can establish purpose. And here the evidence of that purpose really is unmistakable. There's no reason to invent false names and addresses except to conceal the source of the funds, where the funds were coming from. That's just what the Eighth Circuit held in Williams, which is cited in our brief. Quote, the use of a fake name demonstrates the defendant wanted not only to shield himself from reporting requirements, but to conceal the nature or source of the funds. If the only goal was to avoid reporting requirements, there would be no need to use a fictitious name. And so in this case, the General Express defendants used fictitious names not to facilitate the transfer, but to conceal an aspect of the funds, their source. But, and this is quite important, the evidence of structure here isn't the only evidence of purpose. First, Mr. Barras himself was on tape saying that he intended to, quote, legalize the papers. That's at ROA 508 to 509. That's not a purpose just to move money, to get it abroad, to plow it back into drug traffickers. That's to disguise the nature of the money, to make it look like the money is something other than what it is. And second, importantly, Mr. Barras repeatedly emphasizes the testimony of Special Agent Curris, which we heard about in the opening argument here, that he testified, he did, that two purposes of money laundering generally, this was an expert witness, two purposes of money laundering generally are to repatriate the profits of the drug dealers and to promote the sale of additional narcotics. There's no dispute that was a purpose here. But that same expert, Agent Curris, again testifying as an expert, not specifically about the De Niro Express scheme, but testified as an expert that money launderers, quote, do not want people to know that they are involved in criminal acts, end quote. And for that reason, they launder money to, quote, make it look like legitimate income. That's at ROA 387 to 388. So far from undermining a purpose to conceal, the government's expert here proved it. He didn't testify only that the money was shipped abroad to plow it back into the drug business, though it was in part for that purpose, but also to conceal the drug traffickers' identity, to make it look like the money was coming from legitimate sources rather than drug traffickers. And this is exactly the theory that the government presented to the jury. In its opening, the government explained that De Niro Express created the remittances to, quote, disguise whose money it was. And the government really hammered this point in closing, explaining, quote, the whole reason to create fake remittances for these people that didn't really exist is so that people don't know that drug dealers are the people who are dropping off the money. This is the theory that the jury was with. The jury heard the evidence that these transactions were structured in such a way as to disguise the source of the funds. The PSR explained after trial that the phony remittances were, quote, used to hide the source of the funds. The Second Circuit on direct appeal said it had no doubt that the, quote, or little doubt that the, quote, primary motivation, end quote, for the scheme was to, quote, hide the true character of the drug traffickers' proceeds. So all of these evidence and the PSR and the Second Circuit all agreed that, yes, there was a purpose to repatriate profits abroad. Yes, there was a purpose to structure these transactions. But there was also a purpose to hide the source of the funds. That's why Judge Zuhari in the Northern District of Ohio determined here that the transactions were, quote, designed to conceal where the money came from, not where it was at a given moment. Magistrate Judge Kaye Below and Judge James Below expressly agreed, holding that Mr. Barras failed to show that he might have been convicted of a non-existent offense in light of Cuellar. And this court should reach the same conclusion. In this way, it's quite a bit like Wilson v. Fox cited in our brief. This court rejected the 2241 petitioner's argument that he satisfied Reyes for Cana based on Cuellar because of what the trial evidence showed. The trial evidence, quote, supported a conclusion that his actions violated the statute. The evidence showed that the defendant lied about where the money he was using came from. In fact, it came from drug transactions. He lied about where it came from. And that made it, quote, more difficult for the government to trace and demonstrate the nature of the funds. So in this case, there is no doubt that Mr. Barras's conviction is sound in light of Cuellar. And so he cannot satisfy the Section 2255e Savings Clause. And I'd like to turn, if I can, to the 2244a issue. That is another way, as Judge Wiener's question suggested, that is another way to resolve this appeal. This is a successive petition raising the same ground for relief as a prior petition. And that petition was denied in the Northern District of Ohio. As we point out in our brief, this court has repeatedly affirmed the dismissal of federal prisoners' 2241 petitions under circumstances similar to these. But it's still discretionary here, though. Is that correct, even though, as you say, maybe it's been passed on by one court already? The filing here would still be on the standard of discretionary. Is that correct? It is a discretionary dismissal, Your Honor. And I agree that the court used the term required. But the court did cite, the district court that is ditching, did cite Tubwell in supporting this holding. And Tubwell itself says that it's a discretionary analysis. So the court may have felt that under the circumstances, the district court may have thought that under the circumstances, dismissal was compelled. But it's not necessarily true that he thought dismissal was required. But if he did think that dismissal was required, I think affirmance on the 2244a basis is sound. First, as we know in our brief, this court has held that district courts should dismiss successive petitions. And as the Supreme Court just noted two days ago in Bannister versus Davis, the court reiterated the common law rule against repetitive litigation, which under the theory of Tubwell is incorporated in 2244a, but of course would exist even if 2244a didn't exist, quote, demanded the dismissal of successive applications, accepting rare cases, end quote. That's from Bannister versus Davis on Monday. Not to say that that case is directly on point here, Your Honor, just that the principles of the abuse of the writ and successive repetitive petitions, those were not purely precatory principles. They were, they suggested, or they were precatory principles, but they put a thumb on the scale in favor of dismissal for repetitive petitions. This is not the kind of petition where the interest of justice would require ignoring the successive petition, the general bar against successive petitions. And there's no question that Judge James would have so held. Judge, the district court below had ample, had listed several reasons for wanting to dismiss this petition, among which the notion that it was successive was only one. I don't think there's any question that the district court would have dismissed this petition, assuming that the district court didn't recognize that it had the discretion not to. I don't think there's any question that the district court would not have so exercised that discretion. Mr. Kane, Ms. Harris said in the opening argument that the government is not relied on these principles, whether I tend to think of 2244A and abuse of the writ as sort of two sides of the same coin or basically doing the same thing. I suppose you could see a distinction between the statutory one and the common law one, but either way, when and how did the government raise these abuse of the writ principles or 2244A principles? I guess that's a two-part question, one or the other or both. Right. To answer the first part of your question, if I'm understanding, first of all, the government agrees that under either 2244A or under common law principles, whether those are incorporated into 2244A or not, the same principles apply. Indeed, even the cases cited by Mr. Barath, Alamello, and Fanco agree that those common law principles govern. So I don't think there's any real argument from Mr. Barath here that his claim wasn't subject to dismissal. As to whether the government raised those below, Ms. Harris is correct. The government didn't respond in the district court. The district court ordered a report and recommendation and then decided the case without the government filing submission. But we do note in our brief that this court held in Andre versus Goose, that's 850F second 259, that procedural defenses can be raised sua sponte. This is a procedural defense, and we think it can properly be raised by the court sua sponte. And that's practically speaking, I think that's a sensible course, that the government perhaps needn't respond in every case to successive and abusive petitions, and the district court can raise those defenses on its own. So we don't think there's a case where that defense has been waived. So your honor, I think whether the district court's authority flows from 2244A again, or from the common law principles, this petition is properly dismissed. And if I can, I'd like to make one final point, which is that ultimately, I think it's important to remember what is happening in this case here, particularly to the extent it ramifies in any sort of interest of justice inquiry that might follow from whether this court should dismiss the petition as successive. There really is no chance here that Mr. Barath can establish his actual innocence under the Boozley test on the merits here. He'd have to show that it's more likely than not that no reasonable juror would have convicted him. This is an unpreserved claim, this is a long since final judgment, or long past direct appeal. So he has to satisfy that stringent test that this court said applies at the 2255E stage in Christopher versus Miles. There's no way that he can establish either that he was, that no reasonable juror would have convicted him on the concealment theory, for the reasons I discussed before. But more importantly, or I think, practically speaking, more importantly, there's no conceivable way he's going to be able to convince a court that he's actually innocent of counts one and three through 35, because each of those counts charged in the alternative structuring violations under 1956A2B2, that count one was a conspiracy, charging it as an alternative object of the substantive violations. The evidence of structuring in this case is absolutely overwhelming, and Mr. Barath has never challenged the sufficiency of that evidence in any way. Indeed, at sentencing, his counsel conceded that the evidence of structuring was overwhelming. Put a pin for one moment in the evidence structuring. How does this argument about the no reasonable juror applying at the 2255E stage square with Reyes-Riquemia? I mean, to set a really low bar for this, may have been convicted of a non-existent crime. Again, we're just talking about the third prong of the Reyes-Riquemia requirement, right? That's right, Your Honor. And this court's gloss on Reyes-Riquemia in Christopher is the standard which we're applying here, which is, this court said that that stage, the statement of analysis generally is a stringent requirement. And that third prong, quote, requires examining the merits of the claim to determine whether the intervening Supreme Court decision has rendered him actually innocent. And Christopher, I think, is a really instructive case here. Because in Christopher, the defendant was charged with two alternative theories of fraud. And one of those theories of fraud was arguably invalidated by a subsequent Supreme Court decision. But this court in Christopher held that the indictment charged both of those theories, and the jury was instructed on both of those theories. But the, quote, bottom line, that's at page 385 of the conviction, even if the jury returned a general verdict, and even if they were instructed on both theories, the bottom line of the fraud offense didn't involve regulatory, it involved currency and not regulatory licenses, which was the theory that might have been invalidated by the subsequent Supreme Court decision. So we're appealing to Christopher here. It's the same principle. Yes, Reyes-Riquemia says the question is whether the defendant may have been convicted of a non-existent offense, but it also says the question is actual innocence. Inquiry actually does have some teeth. You look at what the merits of the claim were. Here, for the reasons we addressed in our brief, and as I've tried to address in this argument, there is no claim, there is no meritorious claim that he may have been convicted of a non-existent offense. Of course, if this court is more inclined to treat the Reyes-Riquemia bar as a low threshold bar, which I don't dispute could be consistent with the may not, may have been we think the evidence here clearly suffices to show that there is no reasonable probability that he was convicted of a non-existent offense. I'm sorry, I didn't mean to interrupt. I just had one other question. There's obviously a sharp circuit split on how to interpret 2255E, and I realize that Reyes-Riquemia is on the longer side of that admittedly sharp split. Do you happen to know if the government has sought certiorari in any of those cases to resolve that split, or is that just a stable split that we're just going to treat 2255 motions differently depending on where the prisoner happens to have his court of conviction? It has, Your Honor. The government sought certiorari in a case called United States v. Wheeler recently last year. That petition was denied, but the government has tried to press its position in the Supreme Court and noted in its petition in that case that the government is seeking potential legislative fixes or is in the process of seeking potential legislative fixes to allow for statutory claims as opposed to the claims that are simply limited in 2255H. But yes, the government's view is that this is a conflict that warrants the Supreme Court's resolution. Unless the court has any further questions, we'll rest on our briefs. Thank you very much. And thank you, Mr. Cain. Ms. Harris, you have five minutes of rebuttal, so if you'd like to begin. Thank you very much. A few quick points. Really, I think it's remarkable how many decisions would be subject to potential question if the government's rendition of this court's Reyes-Riquemia standard were accepted, because I think it is incorrect in several ways. So, first of all, I think that it is simply incompatible with Santayana and Garland, in particular, to look at the evidence on the record here and say it's good enough if there's some evidence on the record that might have supported, in theory, a conviction on the proper ground under COIAR. I think the problem is, if you look at, for instance, the Santayana decision, a very similar set of facts, a very similar parallel. That was a bereft case in which the Supreme Court had subsequently said that you need a but-for causation to convict someone of providing drugs that lead to death. So it's not enough to show that the providing of drugs resulted in death. You have to show it's a but-for cause. And in that case, Judge Smith's direct appeal, the Santayana decision had said, look, the evidence in the record actually is sufficient to show a heightened standard of causation. But the court still said that wasn't enough and allowed the actual innocence claim to proceed, because it said what matters is what did the jury actually find here, looking at the indictment, looking at the jury instructions, and looking at the verdict form. And like there, it was a general verdict form. And the court couldn't be certain that despite that evidence in the record, the jury had in fact found but-for causation. And so to hear, even if you credited what the government is saying with respect to the other evidence and thought it could satisfy COIAR as circumstantial evidence, or even more than circumstantial evidence, of the purpose of the transactions and showing there was an alternate purpose in addition to trying to just simply plow the money back into drug dealing in the Dominican Republic, that wouldn't be good enough for this threshold stage under Reyes-Requena and its progeny. And second of all, I think the government's position that it doesn't matter if Mr. Barras can satisfy this actual innocence inquiry under Reyes-Requena because the government thinks his claims are ultimately doomed to fail on a 2241 application, also sort of turns this court's presence upside down. The government mentioned the Christopher decision, but I think the more important thing is how this court has, both the text of that decision, and again, how this court has interpreted that decision in Garland and Santillana. That was a case where the only possible way to interpret the jury's verdict against Mr. Christopher was to conclude that they had, in fact, convicted him on a valid theory after the Supreme Court's decision, because the question in that case involved whether the fraud was simply sort of extracting form of regulatory fraud, where the fraud was extracting regulatory permits, or whether it was fraud in the monetary sense of sort of extracting money. And the court said, well, there's no way he was convicted of mere sort of regulatory fraud because taking insurance proceeds money from people was the ultimate aim of the entire scheme, and so there was really no way he could have been actually innocent at all on that record. Again, both Garland and Santillana are directly contrary to that. In Garland, it was a Santos claim, and there were many, many, 120 counts, many of which were not contested. And the court still said, because there were some counts that may have had a murder problem under Santos, it was appropriate to remand and let the district court on a 2241 sort out the merits of the claim. And I think the government's position really would be something that puts the cart before the horse and would turn every single threshold savings clause claim into jumping ahead to the merits of the 2241 when the court may not, this is just a threshold jurisdictional inquiry. And then third, the government has sort of said that the evidence of surreptitious concealment was overwhelming here, sort of citing the East Circus decision and other cases, but all of those cases involve questions where the defendant himself is the one who's both hiding the funds in the transaction and knows of his own purpose. There wasn't sort of any question that when you put the money in your own bank account after taking all of these that you would have perhaps an intent to conceal. But the question here is what the drug dealers were doing. And if it were so obvious that their concealment alone showed the purpose the government wants, Agent Koresh would be very difficult to credit. Why on earth would he say the purpose was instead to plow the money back? So we urge the court to reverse. All right. Thank you all very much for your arguments. Very helpful. I want to thank Ms. Harris in particular. She's court appointed, I understand. And we want to thank her for her briefing. Both of you all filed great briefs, but in her case she's court appointed and her briefing and her oral presentation is not only helpful to her client, but also helpful to the court to ferret through the various positions that have been taken and present them in a comprehensive manner before the court. So we appreciate that as well. The court will take the case under advisement and render a decision in due course.